Legend: The names surrounded by the heavy line were persons who predeceased the testator Clede Ballew. An additional irregular line around a name alerts the reader to those legatees of the will of Clede Ballew and the fraction appearing by each name shows the residuary interest each was to take under the will and codicil. As to the Count I property, the "Top Watts" farm concerns the 1/4 interest Clede got from his wife. This opinion focuses on the other property to be partitioned and the funds divided, known as the "White" property of which there was a devise of the complete ownership.

Note: This suit really involves whether or not Merle's surviving relatives, the appellants, are limited to 1/28th or share additionally the 1/7th legacy to Merle plus sharing in the lapsed legacies of Watts and Powell.

**William Anthony ADAMS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 17990.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 12, 1992.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Dec. 7, 1992.

J. Gregory Mermelstein, Columbia, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

William Anthony Adams ("Movant") appeals from an order denying relief in a proceeding by him under former Rule 27.-

26,[1] wherein he attacked his conviction (by jury) of rape, sodomy and kidnapping. Sentenced as a prior offender, Movant received concurrent life terms for rape and sodomy, and fifteen years for kidnapping, consecutively to the life sentences. We affirmed the conviction on direct appeal. *State v. Adams*, 691 S.W.2d 432 (Mo.App. 1985).

In the instant appeal, Movant presents three assignments of error. We address them in the order presented.

Movant's first point relied on avers the lawyers who represented him in the motion court[2] rendered ineffective assistance in that the first amended motion for relief (prepared by counsel) failed to plead a meritorious ground for vacating the conviction. That ground, says Movant, was:

> [Movant's] trial attorneys failed to advise [him] before trial of the correct maximum punishments for the offenses for which he was convicted. Prior to trial, [Movant's] trial attorneys had told him that the charges against him were all class B felonies, with a maximum punishment of 15 years on each count, when in fact the rape and sodomy charges carried a maximum punishment of life imprisonment. [Movant] was prejudiced by his trial attorneys' failure to advise him of the correct maximum penalties since he likely would have accepted the State's pretrial plea offer of a total of 10 years imprisonment had he known that he faced possible penalties of life imprisonment on his rape and sodomy charges if he went to trial.

Movant's first point further alleges the lawyers who represented him in the motion court failed to present readily available evidence in support of the above ground. Movant asserts we should "remand this case for filing of a second amended motion including this allegation of ineffectiveness by trial counsel, and further proceedings under Rule 27.26."

A proceeding under Rule 27.26 is directed to the validity of the prisoner's conviction and cannot be used as a means of challenging the effectiveness of counsel in the 27.26 proceeding. *Lingar v. State*, 766 S.W.2d 640, 641[2] (Mo. banc 1989), *cert. denied*, 493 U.S. 900, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989).

Movant acknowledges "Missouri courts generally do not recognize claims of ineffective assistance of postconviction counsel." However, says Movant, Missouri courts do recognize "claims of abandonment by postconviction counsel." In support of the latter proposition, Movant cites *McAlester v. State*, 658 S.W.2d 90 (Mo.App. 1983). There, a prisoner's pro se 27.26 motion complained his trial counsel rendered ineffective assistance by failing to contact the prisoner's alibi witnesses until the trial date. The motion court appointed counsel for the prisoner, and counsel filed an amended motion on the prisoner's behalf. However, the amended motion ignored the prisoner's complaint that trial counsel failed to contact alibi witnesses. The motion court denied relief without an evidentiary hearing.

On appeal, the Western District of this Court held the prisoner's appointed counsel did not perform his obligation to amend the pro se motion with respect to the allegation of failure to call alibi witnesses, to allege facts which, if proved, would entitle the prisoner to relief. *McAlester*, 658 S.W.2d at 92. The order denying relief was reversed and the action was remanded to the motion court with directions to grant the prisoner leave to further amend his 27.26 motion and, if facts were then alleged warranting relief, to hold an evidentiary hearing. *Id.* at 92–93.

*McAlester* does not aid Movant. Movant's pro se motion contains no allegation that his trial lawyers failed to advise him of the maximum permissible punishments. Consequently, Movant's lawyers in the mo-

1. Rule 27.26, Missouri Rules of Criminal Procedure (18th ed. 1987), was repealed effective January 1, 1988, by order of the Supreme Court of Missouri, pp. XXV–XXXVII, vol. 721–722 S.W.2d, Missouri Cases.

2. The lawyer representing Movant in this appeal is not one of the lawyers who represented him in the motion court.

tion court, in failing to assert that complaint in the amended motion, did not leave out a ground for relief raised in Movant's pro se motion.

Movant's pro se motion, filed July 24, 1987, is a rambling collection of diffuse and conclusional allegations. The first amended motion, prepared by counsel and verified by Movant on March 29, 1989, pleads five grounds for relief, two of which are the subjects of Movant's points two and three, *infra*. Movant's verification reads, in pertinent part:

> ... I have listed every ground known to me for vacating, setting aside or correcting the conviction and sentence attacked in this motion; and that I understand that I waive any ground for relief known to me that I have not listed in this motion.

The motion court held an evidentiary hearing September 22, 1989, six months after the first amended motion was filed. Movant testified, but made no mention of the alleged failure of his trial lawyers to correctly advise him of the maximum permissible punishments. Furthermore, nothing in his testimony indicated he might have accepted the alleged ten-year offer. Indeed, his testimony included this:

> Q. ... It was your decision to take this case to trial, is that correct?
>
> A. Yes. From the beginning, yes.
>
> Q. Is that what you told your attorney?
>
> A. Yes.
>
> Q. And your attorney did follow your ... wishes in taking it to trial, is that correct?
>
> A. Eventually, yes.

The record is barren of any hint that Movant ever indicated to the lawyers representing him in the motion court that his trial lawyers failed to correctly advise him of the maximum permissible punishments

or that he might have accepted a ten-year offer had they done so.

The principle that a postconviction proceeding cannot be used to challenge the effectiveness of postconviction counsel has been reaffirmed by the Supreme Court of Missouri since Rules 24.035 and 29.15 replaced Rule 27.26.[3] *Pollard v. State*, 807 S.W.2d 498, 502[6] (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). While narrow exceptions have been recognized in *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991), and *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), those cases are factually unlike the instant case. In *Sanders*, postconviction counsel determined there was a sound basis for amending the prisoner's pro se motion, but failed to timely file an amended motion. 807 S.W.2d at 494–95. In *Luleff*, postconviction counsel took no action whatever on the prisoner's behalf. 807 S.W.2d at 498.

Here, Movant's postconviction counsel filed an amended motion setting forth five grounds for relief and presented testimony by Movant and another witness at the evidentiary hearing in the motion court. The following passage from *Pollard* is controlling here:

> What [the prisoner's] new counsel on appeal really argues ... is that counsel before the motion court did not do everything which might have been done, and the brief on appeal asks a remand for the purpose of another and expanded hearing. To acquiesce in that request would go far beyond the narrow compass of *Sanders* and *Luleff*, and as stated in *Sanders* "would defeat the clear provision of subsection (k) [of Rule 29.15]." [4]

807 S.W.2d at 502[8].

*State v. Berry*, 798 S.W.2d 491 (Mo.App. 1990), cited by Movant, is inapposite. There, the prisoner's postconviction counsel filed no amended motion, requested no evi-

**3.** Rules 24.035 and 29.15 took effect January 1, 1988, the date Rule 27.26 was repealed. Pages XXV–XXXVII, vol. 721–722 S.W.2d, Missouri Cases.

**4.** Paragraph "(k)" of Rule 29.15 provides the circuit court shall not entertain successive mo-

tions. Paragraph "(d)" of former Rule 27.26 provided the sentencing court shall not entertain a second or successive motion for relief where the ground presented therein could have been raised in the prior motion.

dentiary hearing and, as none was held, presented no evidence. Here, as we have seen, Movant's postconviction counsel filed an amended motion and presented evidence at the evidentiary hearing. Clearly, Movant was not abandoned by postconviction counsel in the motion court.

Adhering to *Lingar*, 766 S.W.2d at 641[2], and *Pollard*, 807 S.W.2d at 502[6], we hold Movant's first point is not cognizable in this appeal.

■ Movant's second point maintains certain of his constitutional rights were violated in that one of the jurors, Regina Gilliam, was the sister-in-law of the victim and failed to disclose such relationship during voir dire. As evidentiary support for this contention, Movant directs us to this segment of his testimony in the motion court:

> Q. ... There was a juror ... named Regina Gilliam, who turned out that she was a sister-in-law of the victim ...; do you feel your attorney should of got that information during the voir dire section of the trial?
>
> A. Yes. I don't think that he ... tried the best ... he could, because I've read the voir dire procedures and the questions they were asked were minimal.... I think that he should of went a little more in depth....
>
> Q. Do you feel you were prejudiced by having a sister-in-law of the victim on your jury?
>
> A. Yes, I do, yes, sir.

The motion court's findings included this: "... no evidence can be found in the record to indicate that an improper juror was seated at Movant's trial." In that regard, the trial transcript shows that during voir dire the members of the venire were asked whether they knew the alleged victim and whether they had any relatives who had been rape victims. Ms. Gilliam did not respond to either inquiry.

Movant acknowledges our review of the motion court's findings is limited to a determination of whether they are clearly erroneous. Rule 27.26(j); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Mov-

ant argues the finding quoted in the preceding paragraph is clearly erroneous because his testimony was sufficient to demonstrate Ms. Gilliam was the victim's sister-in-law.

■ Not so. In this 27.26 proceeding, credibility of the witnesses was a matter for the motion court's determination; the motion court was not required to believe Movant's testimony. *Garrett v. State*, 814 S.W.2d 325, 327[4] (Mo.App.1991); *Johnson v. State*, 774 S.W.2d 862, 863[6] (Mo.App. 1989); *Thomas v. State*, 759 S.W.2d 622, 623[2] (Mo.App.1988). Consequently, the motion court was not compelled to find Ms. Gilliam was kin to, or knew, the victim. Movant's second point is denied.

As an alternative claim of error, Movant's second point asserts:

> [I]f the motion court is correct that the record did not establish [the] relationship [between juror Gilliam and the victim], then the court clearly erred in denying [Movant's] Rule 27.26 motion because [his] postconviction counsel failed to fulfill his duties under Rule 27.26 and rendered ineffective assistance ... in that postconviction counsel failed to call Regina Gilliam to testify at the evidentiary hearing as to her relationship and acquaintance with [the victim], and failed to present other evidence showing this relationship.

This contention—a complaint of ineffective assistance of postconviction counsel—is not cognizable for the reasons set forth in our discussion of Movant's first point.

■ His final point avers he received ineffective assistance of counsel in the trial court in that his lawyers (a) failed to call Mark Huey as a witness at a "suppression hearing" and later at trial, and (b) failed to call Levi Counts as a witness at trial. We address these complaints separately.

To grasp the import of complaint "(a)," it is essential to note the alleged crimes occurred between 3:00 a.m. and dawn, July 21, 1982. *Adams*, 691 S.W.2d at 435. Movant was arrested at his residence around 6:00 a.m. that date. *Id.* In midafternoon that date, after being advised of his

*Miranda* rights,[5] Movant signed a confession. *Id.*

Before trial, Movant filed a motion to suppress the confession, a hearing was held, and the motion was denied. The confession was admitted in evidence at trial over Movant's objection. Evidence pertinent to the suppression issue is summarized in our opinion in the original appeal, 691 S.W.2d at 435–36, where we rejected Movant's claim that the trial court erred in receiving the confession in evidence.

Mark Huey was not present at the suppression hearing. He did attend the trial, but was not called to testify.

Movant presented Huey as a witness in the motion court. Huey testified he was with Movant July 20, 1982, from midmorning until 10:00 or 10:30 p.m. According to Huey, he and Movant were "drinkin' beer ... drinkin' whiskey, poppin' pills 'n smokin' dope." Huey recounted that when they parted that night, they saw the victim and her sister at a parking lot. Huey recalled, "[T]hey come up to us 'n they told us that there was gonna be a party at such and such place, in the country somewhere."

The motion court held Movant's trial counsel did not render ineffective assistance by failing to call Huey to testify. Specifically, the motion court found:

> At the evidentiary hearing, Mark Huey, who was subpoenaed by the Movant and was present at trial, testified as to Movant's condition up until 10:30 p.m. the evening before the incident at approximately 3:00 a.m. No evidence exists that Mr. Huey's or any other witnesses' testimony would have been beneficial to Movant's defense.

Movant theorizes that had Huey testified at the suppression hearing, his testimony would have provided a basis for a finding that Movant's confession was involuntary because of the "large quantity of intoxicants and drugs he had consumed prior to his arrest." Additionally, argues Movant, Huey's testimony would have provided a basis for a finding that, even if the confession was voluntary, it was not knowing and intelligent because of Movant's intoxicated and drugged condition.

We disagree. As explained in our opinion in the original appeal, after Movant's arrest he was held some three hours before being questioned at approximately 9:00 a.m. 691 S.W.2d at 435. His confession was dictated, transcribed, read and signed in midafternoon, some eight or nine hours after his arrest, and some 15 to 17 hours after he and Huey parted company. *Id.*

■ To prevail on a claim of ineffective assistance of counsel a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders,* 738 S.W.2d at 857.

Our original opinion observes that, according to the victim's testimony (which the jury obviously believed), her encounter with Movant lasted about an hour, during which he raped and sodomized her. 691 S.W.2d at 435. Obviously, Movant's alleged intoxication was not acute enough to inhibit his lust or impair his ability to satisfy it. *Id.* Furthermore, the eight or nine hours between Movant's arrest and the signing of his confession unquestionably expedited sobriety. *Id.*

Given these circumstances, it is almost ludicrous to argue Huey's testimony would have supplied a basis for a finding that Movant's confession was involuntary, unknowing or unintelligent.

Movant's contention that Huey should have been a witness at trial is similarly inane. According to Movant, Huey's testimony would have raised an inference that inasmuch as the victim had seen Movant earlier in the evening and mentioned the party, she may have voluntarily left her home at 3:00 a.m. to attend it. This, says Movant, would have contradicted the victim's testimony that he physically abducted her from her home and forced her to submit to the sex acts.

Evidently, in the years since trial Movant has changed his mind about the importance

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of Huey as a defense witness. During a hearing outside the jury's presence, this dialogue occurred:

THE COURT: ... is there any witness you would like called or anybody you want brought in?

THE DEFENDANT: No, sir, not at all.

THE COURT: Have you asked [defense counsel] to produce any witness that he has not been able to produce?

THE DEFENDANT: No, sir.

THE COURT: So there is really no witness available to you; is that correct?

THE DEFENDANT: That's correct.

Defense counsel then informed the trial court he (counsel) had subpoenaed Huey. Movant confirmed Huey had "been here this morning." Movant voiced no request that Huey be called to the witness stand.

On this record, the motion court did not err in ruling Movant's trial counsel was not guilty of ineffective assistance in failing to present testimony from Huey. Complaint "(a)" of Movant's third point is denied.

■ This brings us to complaint "(b)" of Movant's third point, the subject of which is Levi Counts. According to Movant, Counts was the victim's grandfather and was asleep in the victim's house when she was abducted. The only evidence as to what Counts' testimony would have been was supplied by Movant in the motion court. He testified:

[Y]ou know how word comes through the county jail ... I was incarcerated there ... I got word from another inmate ... he said Levi Counts sent me a message to you, he said that ... if you were to subpoena him he would testify as to what he heard or didn't hear that night, and ... try to help if he could ... and what he was gonna testify to specifically was the fact that he was a light sleeper and if anything had occurred in the house that night, especially to the extent of screaming, you know, something that audible would of been heard by him, and that's basically what he was gonna testify to.

Counts has been an elusory figure throughout this epic. At trial, Movant's lawyer told the court: "There was also a Mr. Levi Matthews who we thought was ... from East Prairie, who was actually ... Mr. Levi Counts, and we have not been able to subpoena him."

At the evidentiary hearing in the motion court, postconviction counsel reported: "I'd like the record to reflect that we had subpoenaed a Mr. Levi Counts—he does not appear in court today and we cannot find him[.]"

■ A prisoner claiming his lawyer rendered ineffective assistance by failing to present a certain person as a witness must prove that such person could have been located through reasonable investigation, that such person would have testified if called, and that the testimony would have provided a viable defense. *Overshon v. State,* 809 S.W.2d 880, 881[3] (Mo.App. 1991); *Shive v. State,* 780 S.W.2d 359, 365[7] (Mo.App.1989); *Lockhart v. State,* 761 S.W.2d 634, 635[4] (Mo.App.1988); *Hogshooter v. State,* 681 S.W.2d 20, 21[2] (Mo.App.1984). The record before us is void of any indication that Counts could have been located through reasonable investigation. Indeed, efforts to compel his attendance in the trial court and the motion court proved futile.

Furthermore, the only showing of what Counts' testimony would have been was Movant's account of a verbal report he allegedly received from an anonymous jail inmate. The motion court was not obliged to assign such evidence any credibility. Complaint "(b)" of Movant's third point is meritless.

The order of the motion court denying relief is affirmed.[6]

PARRISH, C.J., and SHRUM, J., concur.

---

6. Affirmance does not bespeak frail representation by Movant's present lawyer. To the contrary, counsel demonstrated praiseworthy energy, resourcefulness and ingenuity.